UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSE MALDONADO, #71893 | : | CIVIL NO. 3:11CV 871(AWT) |
| V. | : | |
| LEO ARNONE, ET AL. | : | SEPTEMBER 8, 2011 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS**

The defendants in the above-captioned matter respectfully move for a dismissal of this matter pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as the plaintiff has already brought the identical claim in state court and the defendants are entitled to judgment on the basis of res judicata, lack of personal involvement, eleventh amendment and qualified immunity.

**I.      Procedural History**

On December 30, 2010, the same plaintiff, Jose A. Maldonado, #71893, brought an action in Hartford Superior Court against the following persons who are also defendants in this action: Commissioner of Correction Brian Murphy, Rev. Anthony J. Bruno the Department of Correction. See Strom affidavit and State Court Complaint attached thereto.[1] Thus, all of the defendants in this action were defendants in the state court action with the same plaintiff. The state court granted the defendants' motion to dismiss on February 22, 2011. The defendants incorporate by reference herein all of their arguments in their state court memorandum of law

---

[1] The state court action named the former Commissioner of Correction who is in privity with his successor in office, Leo Arnone, the present Commissioner. See Rule 25 FRCP.

which is attached to the affidavit of defendants' counsel. Thereafter plaintiff moved for reconsideration which was also denied by Judge Domnarski.

## II.     Instant Action

The first thing to note about plaintiff's current complaint is that plaintiff's factual claims are completely identical. Also, the plaintiff continues to claim that his religious rights have been violated. The plaintiff uses the exact same language in his claims for monetary damages, and injunctive and declaratory relief that he used in the state court action.

## III.    Legal Argument

### A.    Motion to Dismiss

A Motion to Dismiss tests the legal sufficiency of a complaint, not the weight of the evidence which might be offered in support thereof. See Neitzke v. Williams, 490 U.S. 319, 327 (1989); Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995). The Court is obligated to accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmovant. Scheuer v. Rhodes, 416 U.S. 232; 236 (1974).

To withstand a Motion to Dismiss, a complaint must allege facts setting forth all of the essential elements of a viable legal theory—the facts alleged must establish a prima facie case. Gooley v. Mobile Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988). While the federal rules envision a liberal pleading standard, bald assertions and conclusions of law will not defeat a Motion to Dismiss. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996); Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). Courts may not assume that a litigant can prove facts not alleged or that the defendant has violated laws in ways that the litigant has not pleaded. Papasan v. Allain, 478 U.S.

265, 286 (1986).  "A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)."  DeJesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996).

In ruling on a Motion to Dismiss, the Court may take judicial notice of any decisions and filings in related litigation between the parties.  See, e.g., Shuttlesworth v. City of Birmingham, 394 U.S. 147, 157 (1969); Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994); Titan Sports, Inc. v. Hellwig, 1999 U.S. Dist. LEXIS 10523 (D. Conn. April 26, 1999) *17-*18.  As the Court is aware, judicial notice can be taken of pleadings in other matters without converting this to a Motion for Summary Judgment.  Kramer v. Time Warner, Inc., 937 F.2d 767, 773-75 (2d Cir. 1991) (Court may consider matters of which judicial notice may be taken without converting a motion to dismiss into a motion for summary judgment.)  Nix v. Fulton Lodge No. 2, 452 F.2d 794, 797 (5th Cir. 1971), cert. denied, 406 U.S. 946 (1072)(Motion not converted into a motion for summary judgment when copies of court opinions are submitted); Ansonia Tenants' Coalition, Inc. v. Ansonia Associates, 163 F.R.D. 468 (S.D.N.Y. 1995).[2]

**B.    Res Judicata**

A party may properly raise a challenge based on the preclusion doctrine of res judicata in a Motion to Dismiss.  See, e.g., AmBase Corp. v. City Investing co. Liquidating Trust, 326 F.3d 63, 72 (2d Cir. 2003); Thompson v. County of Franklin, 15 F.3d 245, 253 (2d Cir. 1994); Waldman v. Village of Kiryas Joel, 207 F.3d 105, 114 (2d Cir. 2000); Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000); Hackett v. Storey, 2003 U.S. Dist. LEXIS 23366, No.

---

[2] See also Blue Tree Hotel Inc. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004); Joiner v. Chartwells, 2005 U.S. Dist. LEXIS 38388 (D. Conn. Dec. 20, 2005).

3:03CV395(JBA), 2003 WL 23100328 (D.Conn. 2003); Titan Sports, supra, (Eginton, J.); Kalanquin v. Heublein, Inc., 1999 U.S. Dist. LEXIS 11798 (D. Conn. 1999)(Burns, J.).

"Res judicata and collateral estoppel are important doctrines that reduce the burden of litigation by precluding multiple lawsuits, conserving judicial resources, and encouraging reliance on adjudication by preventing inconsistent decisions." Titan Sports, supra, *29, quoting Chariot Plastics, Inc. v. United States, 28 F. Supp.2d 874, 880 (S.D.N.Y. 1998); see also Allen v. McCurry, 449 U.S. 90, 94 (1980); Johnson v. Watkins, 101 F.3d 792, 794 (2d Cir. 1996). "Once a question has been finally and authoritatively decided it should not be relitigated." The Cadle Co. v. Drubner, 303 F. Supp.2d 143 (D.Conn. 2004)(Thompson, *J.*), citing CFM v. Chowdhury, 239 Conn. 375, 396, 685 A.2d 1108, 1119 (1996). "The doctrine of res judicata seeks (1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose." The Cadle Co., supra, 303 F. Supp.2d at 147, citing State v. Ellis, 197 Conn. 436, 466, 497 A.2d 974, 989-90 (1985).

Res judicata or claim preclusion prevents a party from relitigating claims or issues that were *or could have been* raised in an earlier action in which a final judgment on the merits has been entered. Titan Sports, supra, *30, citing Federated Dept. Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981). Whether a claim that was not raised in the previous action could have been raised therein "depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." Woods v. Dunlop Tire Corp., 972

4

F.2d 36, 38 (2d Cir. 1992) (internal citations and quotations omitted), cert. denied, 506 U.S. 1053 (1993).

Under 28 U.S.C. § 1738, which implements the Full Faith and Credit Clause of the Constitution, federal courts "must give preclusive effect to state court judgments whenever the Court of the State from which the judgments emerged would do so." Titan Sports, supra, *30-31, quoting Allen, supra, 449 U.S. at 96 and Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 81 (1984); see also Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466 (1982). "Federal courts may not employ their own rules in determining the effect of state judgments, but must accept the rules chosen by the State from which the judgment is taken." Patrowicz v. Transamerica Homefirst, Inc., 359 F. Supp.2d 140, 147 (D.Conn. 2005), quoting Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996).

In Connecticut, a judgment rendered on the merits of a claim bars subsequent actions on the same claim on the basis of the doctrine of res judicata. See Demilo & Co. v. Commissioner of Motor Vehicles, 233 Conn. 281, 292, 659 A.2d 162 (1995); State v. Aillon, 189 Conn. 416, 423, 456 A.2d 279 (1983); see also Kalanquin v. Heublein, Inc., 1999 U.S. Dist. LEXIS 11798, supra. Moreover, under Connecticut law, a "judgment is final not only as to every matter which was offered to sustain the claim, but also as to any other admissible matter which might have been offered for that purpose." Aillon, 189 Conn. at 423-24. This is based upon "the public policy that a party should not be allowed to relitigate a matter which it already has had an opportunity to litigate." Delahunty v. Massachusetts Mut. Life Ins. Co., 236 Conn. 582, 591, 674 A.2d 1290 (1996).

> The elements of res judicata in Connecticut are:
>
> (1) identity of the parties to the action; (2) the same claim, demand, or cause of action at issue; (3) a final judgment on the merits by a Court of competent jurisdiction in the first matter; and (4) the parties had a full opportunity to litigate the matter.

World Wrestling Entertainment, Inc. v. Jakkspacific, Inc., 425 F. Supp.2d 484, 508 (S.D.N.Y. 2006), citing Tirozzi v. Shelby Ins. Co., 50 Conn. App. 680, 719 A.2d 62, 65, appeal denied, 247 Conn. 945 (1998). Where the elements are met, res judicata raises an "absolute bar" to a subsequent action on the same claim. Joe's Pizza, Inc. v. Aetna Life & Cas. Co., 236 Conn. 863, 675 A.2d 441, 448 (Conn. 1996).

In Connecticut, in order to determine if res judicata applies, the Court must generally compare the complaint in the first action with the judgment in the second. Id. at 447. "[A] valid, final judgment rendered on the merits by a court of competent jurisdiction is an absolute bar to a subsequent action between the parties . . . upon the same claim or demand." Isaac v. Truck Service, Inc., 253 Conn. 416, 420 752 A.2d 509 (2000). The granting of a defendant's Motion for Summary Judgment as to an entire action constitutes a final judgment upon which res judicata can be based. Rosenfield v. Levy & Droney, P.C., 2001 Conn. Super. LEXIS 3017 (J.D. Waterbury, Complex Lit. Oct. 19, 2001) (Hodgson, *J.*), citing CFM of Connecticut, Inc. v. Chowdhury, supra, 239 Conn. at 375. The Connecticut Supreme Court noted in Chowdhury that, consistent with the Restatement:

> for purposes of res judicata, the traditional standard of finality for purposes of appeal will generally also provide the standard of finality for purposes of preclusion…. Thus, for purposes of res judicata, a judgment will ordinarily be considered final if it is not tentative, provisional, or contingent and represents the completion of all steps in the adjudication of the claim by the Court, short of any steps by way of execution or enforcement that may be consequent upon the particular kind of adjudication."

Id., citing 1 *Restatement (Second),* Judgments § 13 comment b.  Certainly, as held in Rosenfield, supra, the granting of defendants Motion for Summary Judgment as to the entire action in defendants' favor constitutes a final judgment.  See also Cayer v. Komertz, 91 Conn. App. 202, 881 A.2d 368 (2005) (res judicata applied in *denial* of summary judgment); Dontigney v. Roberts, 73 Conn. App. 709, 809 A.2d 539 (2002), appeal denied, 262 Conn. 944 (2003) (small claims adjudication constitutes res judicata bar).  The Connecticut Rules of Appellate Procedure contained in Connecticut's Practice Book state clearly, "When judgment has been rendered on an entire complaint, whether by judgment on the granting of a Motion to Strike…, **by dismissal pursuant to § 10-30,** [as was the case here],  by summary judgment pursuant to § 17-44, or otherwise, such judgment shall be considered a final judgment."

In this case, all of the elements necessary for res judicata effect exist.  There is absolute identity between the parties and the factual claims, as well as the claims of religious rights violations.  The only difference, if one can be found to exist, is that the plaintiff names the present Commissioner of Correction, Leo Arnone, who under Rule 25 FRCP, is automatically substituted for Brian Murphy, the former Commissioner of Correction.  The constitutional Amendments plaintiff claims defendants violated are identical from the State court action to this one.  A final judgment was entered by the state trial court, and the case was completely disposed of by virtue of dismissal in favor of all defendants on all counts.  The plaintiff had a full and fair opportunity to litigate in state court, filing numerous documents and a Memorandum of Law in opposition to the motion to dismiss.  This duplicative action should be dismissed on the basis of res judicata, and the parties given repose.

### C. The Court Should Not Micromanage The Minutiae Of Prison Life

The limitation on prisoners' privileges and rights follows from the need to grant necessary authority and capacity to federal and state officials to administer the prisons. See, e.g., Turner v. Safley, 482 U.S. 78 (1987). "Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." Id., at 84-85. To respect these imperatives, courts must exercise restraint in supervising the minutiae of prison life. Id. Where, as here, a state penal system is involved, federal courts have "additional reason to accord deference to the appropriate prison authorities." Id. McKune v. Lile, 536 U.S. 24, 39 (2002). The plaintiff's demand for the Court to become involved in the minutia of the day to day running of the Enfield Correctional Institution, seeking an injunction concerning day to day gang issues involving gang colors, and uses of beads for signaling gang activities, is exactly what the Supreme Court described as "the ne plus ultra of what our opinions have lamented as a court's 'in the name of the Constitution, becoming . . . enmeshed in the minutiae of prison operations.' Bell v. Wolfish, 441 U.S. 520, 562, 60 L. Ed. 2d 447, 99 S. Ct. 1861 (1979)." Lewis v. Casey, 518 U.S. 343, 362 (1996). The entry of such an order as sought by the plaintiff would be, as described by the Supreme Court, "inordinately --indeed, wildly – intrusive." Id. As discussed in the state court memorandum, plaintiff's newly discovered religious claims, after thirty five years of incarceration, having never made any such claim, and never filed an administrative grievance, are claims so easily fabricated, they should be treated with great skepticism.

### D.     Abstention Pursuant to *Younger* and/or *Rooker-Feldman*

To the extent that the pro se plaintiff in this matter is or may be attempting to appeal or obtain review the state court ruling granting summary judgment on this issue to this Court, the *Younger* doctrine of abstention precludes this action.  Federal courts should generally refrain from interfering in ongoing state proceedings that implicate important state interests and afford plaintiff an adequate opportunity to raise federal constitutional claims.  See Spargo v. N.Y. State Comm'n on Judicial Conduct, 351 F.3d 65, 74-75 (2d Cir. 2003), cert. denied, 541 U.S. 1085 (2004), citing Younger v. Harris, 401 U.S. 37 (1971).

To the extent that the plaintiff is seeking to have this Court attack the state court judgment of dismissal, which he did not appeal, this action is barred by the *Rooker-Feldman* doctrine of abstention.  The *Rooker-Feldman* doctrine bars not only claims that involve direct review of a state court decision, but also claims that are "inextricably intertwined" with a state court decision.  Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923); Moccio v. N.Y. State Office of Court Admin., 95 F.3d 195, 198 (2d Cir. 1996).  The *Rooker-Feldman* doctrine bars federal courts other than the Supreme Court from reviewing state court judgments except under narrow circumstances not applicable here.  See e.g., 28 U.S.C. § 2254.

### E.     Lack of Personal Involvement

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected,' the complainant to a deprivation of rights secured by the Constitution and laws." Rizzo v. Goode 423 U.S. 362, 370-71 (1976), *quoting* 42 U.S.C. §1983.  Where damages are sought in a §1983 action, the defendant(s) must be responsible for the alleged constitutional deprivation.  Thus, an allegation of personal involvement is a necessary prerequisite for a valid cause of action under

§1983. See, e.g., Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987); Johnson v. Glick, 481 F.2d 1028, 1034 (2d Cir.), cert. denied, 414 U.S. 1033 (1973), *rev'd on other grounds,* Graham v. Connor, 490 U.S. 386 (1989); McKinnon v. Patterson, 568 F.2d 930 (2d Cir. 1977), cert. denied, 434 U.S. 1087 (1978).  Consistent with the requirement that personal involvement is required for a claim under § 1983, the Supreme Court has ruled that the general doctrine of *respondeat superior* does not suffice to state a claim under § 1983.  Monell v. New York City Dept. of Social Services, 436 U.S. 658, 692-95 (1978).  Thus, in order to state a cognizable claim, the plaintiff must allege, and ultimately prove, "personal involvement of [the defendants] sufficient to support their liability for wrongful acts," not merely their "linkage in the chain of command." Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985).

Supervisory responsibility alone is not enough to confer exposure to liability.  Williams v. Smith, 781 F.2d 313, 323 (2d Cir. 1986); Williams v. Vincent, 508 F.2d 541, 546 (2d Cir. 1974).  A supervisory official may only be liable if it is alleged that he or she learned of the violation and failed to remedy the wrong, if he created or permitted the policy or wisdom under which the unconstitutional practices occurred, or if he was grossly negligent in managing subordinates who caused the violation.  Williams v. Smith, 781 F.2d at 323-24; Meriwether v. Coughlin, 879 F.2d 1037 (2d Cir. 1989).  "A plaintiff must thus allege a tangible connection between the acts of the defendants and the injuries suffered."  Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986).  An official cannot be held liable merely because he or she occupies a high position in the prison hierarchy.  Colon v. Coughlin, 58 F.3d 865, 874 (2d Cir. 1995).

In this case, the pro se inmate plaintiff has obviously sued high ranking state correctional officials merely due to their position in the chain of command within either the State of

Connecticut or the Department of Correction. Plaintiff has failed to allege the requisite personal involvement and he has failed to file an inmate grievance requesting an administrative remedy. This case should be dismissed as to them for lack of allegations of sufficient personal involvement in the challenged policy.

### E. Eleventh Amendment Immunity

To the extent that plaintiff seeks money damages from the defendants in their official capacities, it is barred by the Eleventh Amendment.

"The doctrine of sovereign immunity was a familiar doctrine at common law. 'The principle is elementary that a State cannot be sued in its own courts without its consent.' Railroad Co. v. Tennessee, 101 U.S. 337, 339 (1880). It is an 'established principle of jurisprudence' that the sovereign cannot be sued in its own courts without its consent. Beers v. Arkansas, 20 How. 527, 529 (1858). We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent." Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989).

### F. Qualified Immunity

The doctrine of qualified immunity protects government officials from civil suits arising from the performance of their discretionary functions when that performance "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995); Oliviera v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994), cert. denied, 513 U.S. 1076 (1995). This doctrine evolved as an accommodation between the need to provide private redress when government officials abuse their position of public trust and the need to shield officials

who responsibly perform their duties from the costs of defending an action. Anderson v. Creighton, 483 U.S. 635, 638-39 (1987); Harlow v. Fitzgerald, 457 U.S. at 814. Assertion of the privilege should be upheld unless the "contours of the right" were "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 438 U.S. at 640. The doctrine of qualified immunity for government officials serves not only as a defense from liability, but also to dismiss an action when the plaintiff has failed to claim the violation of clearly established law or to allege the clear violation of a constitutional right. Behrens v. Pelletier, 516 U.S. 299, 306-307 (1996); Jermosen v. Smith, 945 F.2d 547, 553 (2d Cir. 1991), cert. denied, 503 U.S. 962 (1992).

In this case, there is clearly no way that a reasonable official could have known that the alleged policy regarding Santeria beads is unconstitutional as the only decision cited by plaintiff is a single decision which can be cited solely for the proposition that New York correctional officials did not properly support their motion for summary judgment and gave speculative or hypothetical reasons, rather than properly developing the evidentiary record. Thus, all defendants in this matter are entitled to qualified immunity from any claim by the plaintiff for money damages.

## **CONCLUSION**

For all the foregoing reasons, and for the reasons set forth in the memorandum of law filed in the state court action, the defendants' motion to dismiss should be granted.

DEFENDANTS
Leo Arnone, Et Al.

GEORGE JEPSEN
ATTORNEY GENERAL


BY:  _/s/_____
Steven R. Strom
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105
Federal Bar #ct01211
E-Mail:  steven.strom@ct.gov
Tel.:  (860) 808-5450
Fax:  (860) 808-5591


## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to the following on this 8th day of September, 2011 to:

Jose Maldonado, Inmate #71893
Enfield Correctional Institution
289 Shaker Road
P.O. Box 1500
Enfield, CT 06082


_/s/_____
Steven R. Strom
Assistant Attorney General